**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **MELYNDA MICHELLE FISHER,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **vs.** | § | **NO. 1:18-cv-1108-RP** |
| | § | |
| **SETON FAMILY OF HOSPITALS,** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

**DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This matter came before the Court for a bench trial commencing on May 10, 2021.  The Court having considered the testimony of witnesses, the exhibits admitted into evidence, and the arguments of counsel, now hereby enters the following findings of fact and conclusions of law:

## I.    FINDINGS OF FACT

The Court adopts the following facts and timeline of events presented at the trial of this case:

1.    Seton is a hospital network in the Greater Austin Area and a member of Ascension Health, a faith-based, not-for-profit healthcare organization.

2.    Seton maintains an "Equal Employment Opportunity" policy that prohibits discrimination and retaliation based on many protected classes, including disability.

3.    Seton maintains a separate "Americans with Disabilities Act (ADA)" policy that provides detailed information regarding protections to Seton employees under both the ADA and the FMLA, including information regarding employee entitlement to FMLA leave.

4.    Seton maintains a policy entitled "Family Medical Leave Act (FMLA) Procedure,"

that details employee protections under the FMLA, as well as the procedures that both Seton and employees must follow in order to comply with the FMLA.

5.    Among other procedures outlined in the FMLA policy, employees are advised that "[t]he associate shall provide at least verbal notice sufficient to make the Leave Administrator, his/her manager, or his/her local Human Resources Partner aware that the associate needs FMLA qualifying leave, and the anticipated timing and duration of the leave."

6.    The FMLA policy specifically prohibits retaliation for taking protected leave under FMLA, providing that "[i]t is unlawful for any employer to interfere with, restrain, or deny the exercise of any right provided under the FMLA, or discharge or discriminate against any person for opposing any practice made unlawful by the FMLA or for involvement in any proceeding under or relating to the FMLA."

7.    The FMLA policy also states that "[p]roviding false or misleading information or omitting material information in connection with a FMLA may result in corrective action, up to and including immediate termination."

8.    Seton maintains an "Associate Conduct and Discipline" Policy that sets forth performance and behavioral expectations for employees.  The Policy provides the general procedure of "Progressive Discipline" and states that certain infractions render progressive discipline inappropriate, including, but not limited to, "[f]alsification/altering records or misstatement of fact." The Policy states in that situation, immediate termination of employment is appropriate, even for a first occurrence.

9.    Seton maintains a Management of Absenteeism Policy that sets forth expectations for reporting absences from work and addresses excessive absences/tardiness.  The Policy defines an Unscheduled Absence as an "absence of one hour or more which is not approved in advance in

accordance with the PTO and/or the standards of the department where the associate works."
Unscheduled absences may be considered unexcused. The Policy defines an Unexcused Absence
as an "absence when the associate fails to report to work as scheduled or call their immediate
supervisor or department director to report absence or tardy within the designated timeframe
outlined by department policy." The Policy defines Excessive Absences/Tardiness as three or
more unscheduled absences or occurrences during any three-month period (except during an
associate's first six months of employment, when two or more unscheduled absences during such
six-month period shall constitute excessive absences).

10.    Seton maintains PTO guidelines for associates, which Fisher acknowledged in
writing on October 16, 2017. The guidelines state that scheduled PTO must be submitted at least
72 hours in advance. The guidelines define an Unscheduled Absence as an absence that has not
been approved in advance in accordance with PTO guidelines. The guidelines further state that
one hour of notice prior to associate start time is required for an absence, otherwise it will be
considered as Unexcused Absence.

11.    Seton hired Fisher on July 18, 2016, as a full-time Medical Assistant.

12.    In August 2017, Kendall Sharp, Advance Practice Supervisor in the Developmental
Pediatrics Department, became Fisher's supervisor.

13.    On July 18, 2017, Fisher became eligible for FMLA leave to care for her mother.

14.    Fisher's supervisor and others at Seton assisted Fisher in completing the paperwork
required to apply for intermittent FMLA leave.

15.    Fisher's FMLA request specifically stated that she was requesting leave to care for
her mother, who "has Alzheimer's and requires full-time care."

16.    On July 18, 2017, Sedgwick (Seton's third-party leave administrator) approved

Fisher's request for leave.

17.     Sedgwick sent Fisher a Notice of Eligibility and Rights & Responsibilities, which informed her that she was "required to report all intermittent absences by calling Sedgwick's Absence Reporting Line" and to report her "intermittent absences according to [her] attendance policy."

18.     On July 31, 2017, Sedgwick approved intermittent leave from July 18, 2017, through January 17, 2018.

19.     For the 85 days between August 21, 2017 and November 13, 2017, Fisher utilized her approved intermittent FMLA at least 40 times without incident.

20.     Sharp worked with Fisher to create alternative work schedules so that Fisher would be able to support herself and her mother, while also taking care of her mother.

21.     Sharp noted in a September 16, 2017, email to Fisher, "I know that it has been an extremely stressful time for you and you would like hours if at all possible. My hope is that this will relieve a tiny bit of stress for you."

22.     Sharp provided Fisher with resources to assist Fisher with the emotional stress of being a single caregiver.

23.     Fisher had problems accurately reporting her leave.

24.     Sharp delivered an oral performance coaching to Fisher, dated August 23, 2017, based on Fisher's: (1) "(l)ack of reporting absence[s] related to intermittent FMLA to Sedgwick in the same business day or next business day;" (2) "[l]ack of submitting time edits for FMLA taken;" and (3) "[n]ot reviewing and approving [her] time card every pay period."

25.     On August 23, 2017, during performance coaching, Sharp reminded Fisher that when an intermittent absence occurred, she "must report the absence to Sedgwick in order to have

the absence protected under applicable federal/state regulations."  If she failed to report her absences in a timely manner "(same day or next business day), the absence [would] be denied and [would] be subject to the attendance policy."

26.     On August 23, 2017, during performance coaching, Sharp advised Fisher that if she did not meet the expectations outlined in the coaching, further coaching or formal disciplinary action could result.

27.     Fisher confirmed that as of August 23, 2017, she spoke with Sedgwick and understood her responsibility regarding reporting FMLA-protected leave.

28.     Fisher characterized that meeting with Sharp as positive and non-threatening, noting that Sharp expressed that she wanted Fisher to succeed.

29.     Fisher testified that she did not feel discriminated against in the performance coaching meeting on August 23, 2017, nor did she believe that Sharp was attempting to interfere with Fisher's rights under the FMLA.

30.     After the August 23, 2017 performance coaching, Sharp continued to work with Fisher to ensure that Fisher correctly recorded her absences.

31.     By mid-September 2017, Fisher understood the difference in seeking FMLA-covered leave to care for her mother and PTO for her own illness.

32.     On September 16, 2017, Sharp sent an email to Fisher indicating Seton would allow Fisher to float in other locations to allow Fisher the flexibility she needed to care for her mother and to alleviate stress on Fisher.

33.     On September 19, 2017, when Fisher missed work for her own personal illness, she did not report to Sedgwick that the absence was FMLA-related.

34.     On September 19, 2017, when Fisher missed work for her own personal illness,

Fisher confirmed to Sharp in a text message that the absence was "for me – I was sick – so unscheduled PTO".

35.     Fisher and Sharp exchanged multiple text messages from September 11, 2017 through November 27, 2017.

36.     On September 19, 2017 and September 20, 2017, Fisher and Sharp exchanged the following text messages:

- 9/19/17 Fisher:        Hi Kendall – I'm still having dizzy spells and throwing up – I'm going to Dr at 3:30 today to be seen

- 9/19/17 Sharp:        Ok Take Care

- 9/20/17 Fisher:        Kendall I will be out today for my mom – the help just called me to let me know she can't make it today.

- 9/20/17 Sharp:        Ok thanks. For yesterday r u using fmla or unscheduled pto

- 9/20/17 Fisher:        It was for me – I was sick – so unscheduled pto

37.     On October 16, 2017, Fisher signed the Dell Children's Medical Group (DCMG) Guidelines for Non-exempt Associates, which is a compilation of applicable policies that, among other things, covers unexcused absences and unscheduled absences, including that three or more unscheduled or unexcused absences during a 3-month period would constitute "excessive absences," for which disciplinary action will be implemented.

38.     On October 16, 2017, Fisher signed the "My Commitment to Living the PROMISE," which included her commitment to be honest.

39.     On Wednesday, October 25, 2017, Fisher texted Sharp, stating, "Kendall- I won't be in this morning . . . - I have a severe headache and nauseous (sic)."

40.     Later in the day, on October 25, 2017, Fisher texted Sharp stating, "Kendall- I won't be in today- I have a full migraine and throwing up. I plan on being there tomorrow if this migraine

goes away. I took pain med and laying with ice pack on head."

41.     On October 26, 2017, Fisher reported to Sedgwick that her October 25, 2017 absence was FMLA-related (i.e., leave to care for her mother), and Sedgwick approved the absence.

42.     Fisher missed work on October 30, 2017, November 1, 2017, and November 2, 2017.

43.     Fisher reported to Sedgwick that the absences on October 30, 2017, November 1, 2017, and November 2, 2017 were FMLA-related.

44.     Sedgwick denied FMLA leave for Fisher's absences on October 30, 2017, November 1, 2017, and November 2, 2017 because they were not timely reported.

45.     Sedgwick weekly reports indicate that Fisher incurred three unscheduled and unexcused absences on October 30, November 1, and November 2, 2017.

46.     Fisher's unscheduled, unexcused absences on October 30, November 1, and November 2, 2017, combined with previous unscheduled, unexcused absences, were in violation of Seton's guidelines, which provide that three or more unscheduled or unexcused absences during a 3-month period would constitute "excessive absences," for which disciplinary action would be implemented.

47.     On Friday, November 3, 2017, Fisher texted Sharp, stating, "Kendall I won't be in unfortunately/ I am running fever and a [sic] severe toothache with swollen check [sic]/ face."

48.     On Saturday, November 4, 2017, Fisher reported to Sedgwick that her November 3, 2017 absence was FMLA-related.

49.     Fisher remained out of work on Monday, November 6 and Tuesday, November 7, 2017.

50.     Fisher reported to Sharp via text message the absences on Monday, November 6 and Tuesday, November 7, 2017 were due to severe tooth pain, and a resulting root canal.

51.     Fisher reported the absences on November 6 & 7, 2017 to Sedgwick as FMLA-related leave, and Sedgwick approved those absences.

52.     Fisher was out of work on Wednesday, November 8 and Thursday, November 9, 2017.

53.     Fisher reported that she had "[p]retty intense oral surgery" on Wednesday, November 8.

54.     While Fisher was out, Sharp learned that Fisher reported several of the days she was absent for her own tooth issues as FMLA-related absences to Sedgwick (i.e., leave to care for her mother).

55.     In a text exchange between Fisher and Sharp, Fisher stated to Sharp, "I didn't file for fmla days off since this is about me."

56.     Sharp informed Fisher on November 8, 2017, "I received notification that you did submit for fmla for the last couple days. I will look at it closer tomorrow. But you are correct you should not be submitting for fmla unless it is for that specific reason."

57.     Sedgwick provided Seton with a weekly report of employee absences that are reported as FMLA-related, including whether the absences are approved.

58.     Sharp received notice that Sedgwick approved FMLA leave for four of Fisher's absences on days when Fisher reported to Sharp that she was missing work for her own personal illness.

59.     Sharp determined that Fisher attempted to utilize intermittent FMLA that was intended to care for her mother, for her own personal health reasons, and that Fisher provided false

or misleading information.

60.     Sharp discussed her findings with Human Resources Advisor Elena Rojo, who conducted her own investigation and verified Sharp's findings.

61.     Sharp and Rojo agreed that Fisher should be terminated for providing false and misleading information to Seton and to Sedgwick, for unscheduled and unexcused absences and for excessive unscheduled PTO.

62.     Rojo and Sharp thought it was significant that Fisher had compounding violations (i.e., falsification, unscheduled and unexcused absences, and excessive unscheduled paid time off).

63.     Fisher's employment was terminated, effective November 15, 2017.

64.     Fisher was terminated for violating Seton policy by providing false information about her absences, in addition to violations of company policy for unscheduled and unexcused absences, and excessive unscheduled paid time off.

65.     Sharp delivered the termination notice to Fisher on November 15, 2017, which indicated that Fisher "reported unable to report to work on 10/25/17, 11/3rd–7th/17 related to personal health reasons (unscheduled PTO), however [she] then submitted these dates as intermittent FMLA, which were approved by Sedgwick."  The notice also cited the August 23, 2017, counseling, and stated that the termination was based on: "Falsification/altering records or misstatements of fact, Failure to follow call in procedures and Excessive absences."

66.     During the termination meeting, Sharp advised Fisher that if she did not agree with the termination, Fisher could address the issue with HR through the Problem Resolution process.

67.     Fisher never utilized Seton's Problem Resolution Procedure to challenge the termination of her employment.

68.     Fisher never complained to Seton that her unexcused absences were in error.

69.     Fisher never complained about discrimination or retaliation during her employment or at the termination meeting.

70.     Fisher testified that she did not believe that she was being discriminated against during any relevant time in her employment with Seton.

71.     Fisher obtained subsequent employment on or about March 25, 2018.

72.     Fisher's last hourly rate of pay was $17.69 per hour.

73.     Fisher was unable to work consistently between November 2017 and October 2019 due to her mother's condition.

## II.     CONCLUSIONS OF LAW

1.     The Family and Medical Leave Act prohibits employers from retaliating against employees for taking leave that is covered by the Act. *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). Claims for violations of those rights are brought under 29 U.S.C. § 2615(a)(2). *Id.*

2.     There are three essential elements to a claim of retaliatory discharge under the FMLA: (1) protected activity by the plaintiff; (2) discharge by the employer; and (3) causal connection between the protected activity and the discharge. *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999). Fisher also must show that either (a) she was treated less favorably than an employee who did not request leave under the FMLA or (b) the adverse decision was made because she took FMLA leave. *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008).

3.     Fisher did not meet her burden to establish that she was treated less favorably than an employee who did not request FMLA leave.

4.     Fisher's subjective belief that Seton terminated her because she took FMLA leave

is unsubstantiated and insufficient to be the basis for judicial relief. *EEOC v. La. Office of Cmty.*

*Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995) ("[A]n employee's subjective belief of discrimination,

however genuine, cannot be the basis for judicial relief."); *Garcia*, 631 F. Appx at 212 (same).

5.      Fisher's allegation of temporal proximity between her FMLA leave and termination

is insufficient to establish a *prima facie* case of retaliation.  *See Strong v. Univ. Healthcare Sys.*,

L.L.C., 482 F.3d 802, 808 (5th Cir. 2007) (holding (1) to be persuasive evidence, temporal

proximity must be very close, and importantly (2) temporal proximity alone, when very close, can

in some instances establish a *prima facie* case of retaliation.)Seton proffered a legitimate, non-

retaliatory reason for terminating Fisher. *Penske Logistics, L.L.C.*, 631 F. App'x at 211 (quoting

*Read v. BT Alex Brown, Inc.*, 72 F. App'x 112, 115 (5th Cir. 2015)) *Wallace v. Methodist Hosp.*

*Sys.*, 271 F.3d 212 (5th Cir.) (stating "Where the plaintiff fails to produce substantial evidence of

pretext, or produces evidence permitting only an indisputably tenuous inference of pretext,

summary judgment in favor of the defendant is appropriate."); *Sanchez v. Dallas/Fort Worth Int'l*

*Airport Bd.*, 438 F. App'x 343, 347 (5th Cir. 2011) (per curiam) (unpublished) (stating "The issue

at the pretext stage is whether [the defendant's] reason, even if incorrect, was the real reason for

[the plaintiff's] termination") (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th

Cir. 2002)).

6.      The analysis as to whether an employer's stated reason for a termination is pretext

for discrimination or retaliation "does not turn on whether the employee in fact violated the policy,

but rather whether the employer reasonably believed the employee violated the policy and acted

based on that belief." *Chamblee v. Miss. Farm Bureau Federation*, 551 Fed. App'x. 757, 760 (5th

Cir. 2014) (citing *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir. 1993)).

7.      As a general rule, "an employee's denial of wrongdoing does not create pretext

because it does not impact whether the employer reasonably believed the wrongdoing occurred." *Harkness v. Bauhaus U.S.A., Inc.*, 86 F. Supp. 3d 544, 562 (N.D. Miss. 2015) (citing *Strahan v. Waste Mgmt.*, 539 Fed. App'x. 331, 332 (5th Cir. 2013)).

8.      "Pretext is established either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) (internal quotations omitted).

9.      Fisher did not meet her burden to demonstrate that Seton's proffered reason for terminating her was pretextual.  *Id*.

10.      Fisher did not meet her burden to establish that Seton had discriminatory animus against her. *Garcia v. Randolph-Brooks Fed. Credit Union*, No. SA-18-CV-00978-OLG, 2020 WL 364133, at \*6–7 (W.D. Tex. Jan. 22, 2020); *Kibbie v. Hays Consol. Indep. Sch. Dist.*, No. A-19-CV-393-SH, 2020 WL 1695688, at \*9 (W.D. Tex. Apr. 7, 2020).

11.      Fisher did not establish a claim for FMLA retaliation. *Trautman v. Time Warner Cable Tex., LLC*, A-16-CV-1049-LY, 2017 WL 5985573 (W.D. Tex. Dec. 1, 2017).

12.      Fisher's ADA associational discrimination claim is not a recognized cause of action in the Fifth Circuit. *See Spencer v. FEI, Inc.*, 725 F. Appx 263, 267 (5th Cir. 2018) (per curiam) (observing that the Fifth Circuit has not "explicitly recognized" a cause of action for associational discrimination) (quoting *Grimes v. Wal–Mart Stores Tex., L.L.C.*, 505 F. App'x 376, 380 n.1 (5th Cir. 2013) (per curiam)). Similarly, courts have not recognized a cause of action for associational discrimination claim under the TCHRA. *Gomez v. Office Ally, Inc.*, No. SA-18-CV-1101-XR, 2019 WL 2774367, at \*8 (W.D. Tex. Jul. 1, 2019), aff'd, 796 F. App'x 224 (5th Cir. 2020); *Spinks v. Trugreen Landcare LLC*, 322 F. Supp. 2d 784, 795 (S.D. Tex. 2004).

13.      Even if the Fifth Circuit recognized ADA associational discrimination claims,

Fisher did not establish a *prima facie* case of associational disability discrimination, which requires Fisher to establish that (1) she was qualified for the job at the time of the adverse employment action; (2) she was subjected to an adverse employment action; (3) Seton know she had a relative with a disability; (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative was a determining factor in the employer's decision. *Spinks*, 322 F. Supp. 2d at 795

14.    Fisher did not establish that she was qualified for her position because her repeated unexcused absences rendered her unqualified for her job. *See Starts v. Mars Chocolate N. Am., LLC*, No. W:14-CV-064, 2014 WL 11510274, at *4 (W.D. Tex. Dec. 18, 2014), aff'd sub nom. *Starts v. Mars Chocolate N. Am., L.L.C.*, 633 F. App'x 221 (5th Cir. 2015) (finding excessive absences over 12 months of employment showed the plaintiff was not a qualified individual under the ADA); *Harville v. Texas A & M Univ.*, 833 F. Supp. 2d 645, 661 (S.D. Tex. 2011) (holding when attendance is an essential aspect of the job, an individual who has frequent absences is unqualified.).

15.    Fisher did not establish that she was qualified for her position because she falsified information regarding her FMLA leave. *Coaker v. Home Nursing Servs., Inc*., No. CIV. A. 95-0120-AH-C, 1996 WL 316739, at *14 (S.D. Ala. Feb. 5, 1996), aff'd sub nom.

16.    Fisher did not establish that Seton terminated her employment because of her relationship with a disabled person. *See Besser v. Texas Gen. Land Office*, No. A-17-CV-1010-SS, 2018 WL 1353936, at *5 (W.D. Tex. Mar. 15, 2018) (citing Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 760 (5th Cir. 1996).

17.    There is no reasonable inference that the health condition of Fisher's mother played any role in the decision to terminate Fisher's employment.

18.     To accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case, the temporal proximity must be "very close." *Besser*, 2018 WL 1353936, at *5 (emphasis added).

19.     Given 120 days separates Fisher's termination on November 15, 2017, from when she first started using her intermittent FMLA leave on July 18, 2017, these dates, as a matter of law, are not close enough to establish a causal link. *Potts v. United Parcel Serv.*, No. 3:11–CV–2407–L, 2013 WL 4483080, at *14 (N.D. Tex. Aug. 22, 2013) (finding two months between the plaintiff's January 2011 intermittent FMLA leave request and his March 2011 discharge insufficient to establish a causal link in an intermittent FMLA retaliation claim).

20.     Even if Fisher could show a *prima facie*, she cannot establish pretext. It is well-settled that temporal proximity alone is not sufficient in the pretext analysis. *Kibbie*, 2020 WL 1695688, at *9; *see Roberts v. Lubrizol Corp.*, 582 F. App'x 455, 461 (5th Cir. 2014) (citations omitted).

21.     Fisher's available damages are limited to the time between her termination and subsequent employment. *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 487 (5th Cir. 2007), order clarified (Sept. 27, 2007).

22.     Fisher is not entitled to damages for dates during which she was unavailable to work.  *Stephenson v. Nokia Inc.*, No. 3:06-CV-2204-B, 2008 WL 2669492, at *8 (N.D. Tex. May 1, 2008).

Respectfully submitted,


/s/  Melissa J. Ackie
Kimberly R. Miers
State Bar No. 24041482
Melissa J. Ackie
State Bar No. 24088686
Kelli C. Fuqua
State Bar No. 24097713

LITTLER MENDELSON P.C.
100 Congress Avenue, Suite 1400
Austin, Texas 78701
512.982.7250
512.982.7248 – facsimile
kmiers@littler.com
mackie@littler.com
kfuqua@littler.com

**ATTORNEYS FOR DEFENDANT
SETON FAMILY OF HOSPITALS**

## CERTIFICATE OF SERVICE

On the 21st day of April 2021, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Western District of Texas, Austin Division, using the Electronic Case Filing system of the Court. I hereby certify that I have served all counsel of record via the Court's e-filing system as follows:

Kell A. Simon
THE LAW OFFICE OF KELL A. SIMON
902 East Fifth Street, Suite 207
Austin, Texas 78702

*/s/ Melissa J. Ackie*
Melissa J. Ackie